POLSINELLI PC
Jason A. Nagi
900 Third Avenue, 21st Floor
New York, New York  10022
(212) 644-2092
*Attorneys for St. James Lender, LLC*

Hearing Date:  May 13, 2015 at 11:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re: | Chapter 11 |
|---|---|
| 983 Fulton LLC | Case No. 14-12144 (MG) |
| Debtor. | |

**OBJECTION OF ST. JAMES LENDER, LLC TO DEBTOR'S
THIRD MOTION TO EXTEND ITS EXCLUSIVE PERIOD TO
FILE AND SOLICIT ACCEPTANCES OF A PLAN OF REORGANIZATION**

St. James Lender, LLC (the "**Lender**") objects to the debtor's *Motion for Entry of an Order Further Extending Exclusive Right to File a Plan of Reorganization and to Solicit Acceptances With Respect Thereto and for Related Relief* [Docket # 58] (the "**Third Extension Motion**") and states as follows:

**INTRODUCTION**

1.      This is an uncomplicated Single Asset Real Estate case—Debtor's only asset is a six unit apartment building with a ground floor commercial unit with an address of 983 Fulton Street Brooklyn, New York (the "**Property**")—that has lazily drifted through the first nine months of its bankruptcy proceeding.  Aside from (1) competing motions for the receiver to turn over property and to be excused from turnover of property, which occurred last August when this case was filed, and which was mutually resolved, and (2) the negotiation of a non-controversial cash collateral order, this case has been static.  Despite the fact that as of September 2014—

nearly seven months ago—the Debtor had access to the receiver's reports from January 2014 through July 2014, the Debtor claims its most pressing need for its *third* extension is primarily based on its need for "time to verify operations of the Property." (Third Extension Motion, at ¶ 15) [Docket No. 58-1]. As of today, the Debtor has information at its disposal concerning *the last 14 months of operations*, on a property that stabilized years before the July 23, 2014, petition date.

2. Lender understands that the Debtor was offered well more than the $2,796,701 of claims filed in the claims register to purchase the Property, leaving a distribution for equity. There is a simple solution here—file a plan of reorganization that contemplates a sale of the Property with the liens of the two secured creditors to attach to the proceeds of the sale in order of priority. This would be a "100 cent plan," with money trickling down to equity. Indeed, there are only four other creditors, all of whom are unsecured, and whose claims total $18,586. This is the most effective, and efficient way forward and it will maximize value for all parties. If Debtor does not want to initiate this solution, Lender should be allowed to do just that by denial of the Third Extension Motion.

## PROCEDURAL HISTORY

3. The Debtor filed its petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code on July 23, 2014 (the "**Petition Date**"). [Docket No. 1.]

4. The court set a bar date of January 20, 2015 to file proofs of claim. [Docket No. 45.]

5. Lender's time to file its proof of claim was extended to February 6, 2015 by Stipulation and Order Extending St. James Lender LLC's Time to File a Proof of Claim. [Docket No. 49.]

6.  Lender filed its Proof of Claim on February 5, 2015. [Claim No. 7.]

7.  As of April 29, 2015, the following proofs of claim in the indicated amounts have been filed by the Debtor's creditors:

**Secured Claims**
$2,296,102.00    St. James Lender, LLC (1st Lien)
$482,013.00      York City Capital (2nd Lien)

**Unsecured Claims**
$3,800.00        New York City Department of Housing (unsecured)
$2,095.50        New York City Administrative Trials and Hearings)
$9,608.63        New York City Department of Finance
$3,081.97        New York City Water Board
**$2,796,701.10**    **Total Claims**

8.  Debtor filed its Third Extension Motion on April 20, 2015. [Docket No. 58.]

## ARGUMENT

### PRACTICAL CONSIDERATIONS AS TO WHAT WOULD MATERIALLY MOVE THIS CASE FORWARD SUPPORT DENYING THE THIRD EXTENSION MOTION

9.  Debtor correctly indicates that it has the burden to establish cause. *In re Borders Group, Inc.*, 460 B.R 818, 821-822 (Bankr. S.D.N.Y. 2011) ("A court's decision to extend a debtor's exclusive periods is a serious matter; extensions are not granted routinely or cavalierly.") (citing *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006) ("A decision to extend or terminate exclusivity for cause is within the discretion of the bankruptcy court, and is fact-specific")); *In re Mid-State Raceway, Inc.*, 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005) ("In considering the Debtors' Application, the Court is mindful that whether or not to grant an extension of exclusivity pursuant to Code § 1121(d) is a matter of discretion based on all facts and circumstances. It is the Debtors that have the burden of establishing the requisite cause for any extension.") (internal citations omitted).

3

10. But simply citing to, and applying the nine-factor test enumerated in *In re Adelphia Commc'ns Corp.*, 352 B.R. 578 (Bankr. S.D.N.Y. 2006), glosses over a dispositive section of that very case. Indeed the *Adelphia* court itself found that "the test is better expressed as determining whether terminating exclusivity would move the case forward materially, to a degree that wouldn't otherwise be the case… Certainly practical considerations, or other considerations in the interests of justice, could override, in certain cases, the result after analysis of the nine factors…." *Id.* at 590. *See also*, *In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) ("When the court is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward. And that is a practical call that can override a mere toting up of the factors").

11. Here, terminating exclusivity will allow a case that has been virtually dormant to actually move forward in a manner that will result in full payment to creditors. Filing a plan of reorganization that contemplates a sale, based on an existing offer that could be used as a stalking horse bid is an inherently sensible way to maximize the value, and the Third Extension Motion should be denied so that Lender can file such a plan.

### THE ADELPHIA FACTORS FAVOR DENIAL OF THE THIRD EXTENSION MOTION

12. In addition to the fact that practical considerations militate in favor of denying Debtor's Third Extension Motion, a majority of the nine-factor *Adelphia* test supports denying the Third Extension Motion, which are:

> (a) the size and complexity of the case;
> (b) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;
> (c) the existence of good faith progress toward reorganization;

4

(d) the fact that the debtor is paying its bills as they become due;
(e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;
(f) whether the debtor has made progress in negotiations with its creditors;
(g) the amount of time which has elapsed in the case;
(h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
i) whether an unresolved contingency exists.

*Adelphia Commc'ns Corp.*, 352 B.R. at 590.

13. Factors (a) and (b) do not favor Debtor. This is a small case that involves one asset, with one senior secured lender, and is the epitome of a two-party dispute. The Petition was only filed to prevent a foreclosure. The Debtor has no employees. The Debtor's only operations is the collection of rent and the maintenance of a six unit apartment building with a ground floor commercial unit, in Brooklyn, New York, which is managed by a third party. The Property was stabilized by the State court-appointed receiver four years before the Petition was even filed [Docket No. 5-2.]. Moreover, the Debtor has the monthly receiver reports dating back to January, 2014—a 14 month history. It has had sufficient time to negotiate a plan of reorganization but has chosen not to, and does not need more time which will only further delay a resolution of this case.

14. With respect to factor (c), the Debtor has not made any progress, or attempts to negotiate with Lender. One of Lender's managers contacted Debtor directly to discuss the case over a year ago. After not receiving a response, Lender again directly contacted Debtor, and Debtor made an offer to pay Lender at a discount of hundreds of thousands of dollars off Lender's claim. Debtor, however, never followed through with its own offer. As a result, Lender, through counsel made an increased settlement offer to Debtor's counsel that was still hundreds of thousands of dollars less than Lender's claim, and provided a deadline of April 20,

5

2015, by which the offer had to be accepted. Other than filing the Third Extension Motion, Lender has yet to receive a response to its offer which expired two weeks ago. On these facts, Debtor cannot credibly claim that it has made any good faith attempts to negotiate with Lender. In addition, Debtor does not even make mention of an attempt to negotiate with the second lien lender, which filed an amended proof of claim in the amount of $482,013.00.

15. Debtor has been paying its bills as they come due—largely the result of the work done by the receiver in stabilizing the Property—factor (d), and does have a reasonable prospect to reorganize, factor (e), but only if there is a sale through a plan of reorganization. Without a sale, the Debtor will not be able to reorganize, as any "new note" option it may seek with new financing would have to come behind the first and second liens.

16. Finally, factors (f) through (j) all favor denial of the Third Extension Motion. The Debtor has not made progress in negotiations with its creditors (factor (f)). The Third Extension Motion only references one of seven creditors—the Lender. An uneventful nine months have elapsed since the Petition Date (factor (g)). The Debtor's failure to follow through with its own settlement offer and failure to respond to Lender's offer other than by filing the Third Extension Motion is a de-facto pressure tactic (factor (h))—further delay in Lender's years-long enforcement action. Finally, there are no significant "unresolved" contingencies (factor (i)). The bar date passed over three months ago and the proofs of claim have been submitted. To the extent the Debtor implies that the proofs of claim are "unresolved," such an argument would mean that whenever a Debtor has not completed negotiations of claims, a case would have "unresolved contingencies," an exception that would swallow the rule with respect to the nine-factor test. Moreover, such an unresolved contingency would not stop the Debtor from confirming a plan of reorganization given the offer to purchase the Property.

6

17.     In short, nearly all of the significant factors here, militate against granting a further extension of exclusivity.

## CONCLUSION

18.     The Debtor has had plenty of time to review the data and analyze the property. It has not taken any active steps to reorganize, deciding instead to sit on its laurels and dither in bankruptcy. It should not be allowed to do this any longer, especially in light of the pending offer that can pay all the creditors in full. For this reason the Third Extension Motion must be denied so that Lender can file its own plan of reorganization.

Dated: New York, New York
      May 6, 2015

    POLSINELLI PC

    */s/ Jason A. Nagi*
    Jason A. Nagi
    900 Third Avenue 21st Fl.
    New York, New York 10022
    (212) 644-2092 (Telephone)
    (212) 684-0197 (Facsimile)
    jnagi@posinelli.com

    *Attorneys for St. James Lender, LLC*

## CERTIFICATE OF SERVICE

I, Jason A. Nagi, hereby certify that on the 6th day of May, 2015, a true and correct copy of the *Objection of St. James Lender, LLC to Debtor's Third Motion to Extend its Exclusive Period to File and Solicit Acceptances of a Plan of Reorganization* was served electronically by ECF notification from the Court to all interested parties, including Debtor's counsel and the U.S. Trustee.

    */s/ Jason A. Nagi*

50331250